UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 09-16-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STANLEY BOWLING, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of Defendant Stanley Bowling's motion to dismiss the indictment against him. [Record No. 367] In support of his motion, Bowling asserts that the United States used certain information provided to a grand jury pursuant to 18 U.S.C. § 6002 in violation of *Kastigar v. United States*, 406 U.S. 453 (1972). A hearing was conducted on the Defendant's motion on September 28, 2009. Based on the information provided by the parties prior to and during this hearing, the Court concludes that the United States has not utilized Defendant Bowling's immunized testimony, directly or indirectly, in a manner that would violate his right against self-incrimination. Accordingly, his motion will be denied.

## I.    Relevant Facts

Defendant Stanley Bowling appeared before a federal grand jury on January 12, 2007, in Covington, Kentucky, after asserting his Fifth Amendment right against self-incrimination

and after being afforded formal immunity pursuant to 18 U.S.C. § 6002. [*See* Record No. 444; attachments.] During the course of the grand jury proceeding, Bowling testified to an illegal kick-back scheme with Manchester City Manager Keenon White. Subsequently, Keenon White entered a guilty plea to an information containing charges which did not allege involvement by Defendant Bowling.

On July 19, 2009, a Superseding Indictment was returned in this case adding Bowling as an additional Defendant.[1]  The original and Superseding Indictment relate to an alleged election fraud scheme in which voters were bribed to vote for a "slate" of candidates. Each Defendant is alleged to have participated in the scheme in a variety of ways. Bowling was named in three counts of the Superseding Indictment. First, in Count 1, Bowling was charged as a participant in a RICO conspiracy with seven other Defendants. In paragraph 8, the Superseding Indictment alleges that Defendant Bowling, at relevant times,

> was a resident of . . . [Clay County] . . . and was active in the political affairs of the county by, among other acts, elected as Magistrate in 2002 and continues to serve in that position, and is the owner and operator of B and B Excavating, an excavating company, in Manchester and Clay County which contracts with the city and county to provide excavation services. Bowling also distributed money to bribe voters and exerted influence over the selection of precinct workers in local elections.

[Record No. 272]

The Clay County Board of Elections is alleged to be the RICO enterprise. It is alleged in paragraph 10 that the Defendants, including Bowling, participated in the operation and

---

[1]    Defendant Bowling was interviewed on March 21, 2006, as part of the election fraud investigation. According to Special Agent Briggs, Bowling denied any involvement in the scheme. In fact, the government did not obtain any information from Bowling that led to the election fraud charges.

management of the enterprise.  Further, in paragraph 12 f., Bowling's role in the enterprise is described as an associate of the enterprise who distributed funds pooled by members of the scheme to buy votes for the "slate" and to promote himself politically and enrich himself personally. [Record No. 272]

In Count 12 of the Superseding Indictment, the United States seeks forfeiture in the amount of $3,472,847.38 (*i.e.*, a money judgment) from all Defendants pursuant to 18 U.S.C. § 1963 and 28 U.S.C. § 2461(c).  Finally, in Count 13, the government seeks forfeiture in the amount of $1,513,512.36 from Bowling and his co-Defendants under 18 U.S.C. § 982.

On August 17, 2009, Defendant Bowling moved for dismissal of the Superseding Indictment as it relates to him.  Bowling contends that, on January 12, 2007, he testified before the Covington grand jury to obtaining a number of governmental construction contracts for his business, B & B Excavating Company beginning in 2004 or 2005.  He asserts that the contracts were signed by the then-Mayor, Daugh White, but were negotiated by the Mayor's son and City Manager, Keenon White.  Bowling asserts that he testified under a grant of immunity that the City Manager extorted kick-backs as part of the contract negotiations.

Bowling asserts that, as a result of his grand jury testimony, the United States was able to approach Keenon White and his wife and enlist their assistance as confidential informants in the investigation which led to the present case. Citing *Kastigar v. United States*, 406 U.S. 441 (1972), he contends that the United States has violated its immunity agreement because nothing derived from his testimony may be used against him.

In response to the Defendant's motion, the United States filed under seal a copy of Bowling's January 12, 2007, testimony before a Covington, Kentucky, grand jury. It has also filed under seal a copy of F.B.I. Special Agent Timothy Briggs' July 19, 2009, testimony before a London, Kentucky, grand jury which returned the Superseding Indictment naming Bowling as a Defendant.[2] The United States asserts that it has not violated Bowling's grant of immunity. Instead, it argues that the evidence used to obtain his indictment came from legitimate, independent sources and was not the direct or indirect result of Bowling's January 12, 2007, testimony.

A hearing on Defendant Bowling's motion was held on September 28, 2009. During the hearing, the United States presented the testimony of two witnesses: F.B.I. Special Agent Timothy Briggs and Brent Caldwell, the attorney representing Kennon and Wanda White. Portions of their testimony are outlined below.

## II.    Legal Analysis

Under *Kastigar v. United States*, 406 U.S. 441 (1972), once a defendant establishes that he has testified under a grant of immunity to matters related to a federal prosecution, the government has the burden of demonstrating that its evidence against him is not tainted.

---

[2]      Following the hearing held on September 28, 2009, the United States filed under seal the testimony of an IRS Special Agent who investigated each Defendant's financial gain resulting from his or her alleged involvement in the RICO conspiracy. All of Bowling's contracts with the City of Manchester as well as the money he received as a magistrate are included in this testimony and in the total forfeiture amount requested in Count 12. However, there is no indication that this agent utilized Bowling's January 12, 2007, Covington grand jury testimony in obtaining the information presented to the London grand jury. Instead, his testimony appears to be based upon his own research and investigation of the money received by each Defendant as a result of his or her government contracts and/or official position.

Specifically, the United States must show by a preponderance of evidence that it had a legitimate, independent source for the evidence used against the defendant.  This is because the immunity provided by 18 U.S.C. § 6002 leaves the witness and the government in substantially the same position as if the witness had claimed the Fifth Amendment privilege. In other words, "the immunity is . . . coextensive with the privilege and suffices to supplant it."  *Id*. at 462.  Further, as the Sixth Circuit has recognized, the government's burden under *Kastigar* is "a heavy one."  *United States v. Overmyer*, 899 F.2d. 457, 463 (6th Cir. 1990).

The United States has met its "heavy burden" by providing copies of the relevant portions of grand jury testimony and through the testimony of Briggs and Caldwell.[3] According to Special Agent Briggs, the January 12, 2007, testimony of Defendant Bowling was not used or in any way referenced in obtaining the cooperation of Keenon or Wanda White in the investigation leading to Bowling's indictment.  Instead, the United States had sufficient information by January 12, 2007, to charge Kennon White with federal offenses. The information provided by Bowling was described by Special Agent Briggs as "the icing on the cake" which could be used if White later changed his story.  And because he did not, the information was not used against him.

Further, the information Bowling provided to the Covington grand jury was not even disclosed to the Whites or their attorney, Brent Caldwell.  According to attorney Caldwell,

---

[3]      As noted previously, the United State utilized a separate grand jury in Covington, Kentucky, to receive the testimony of Defendant Bowling on January 12, 2007.  The current matter was presented to a separate grand jury in London, Kentucky, which returned the Superseding Indictment.  The United States utilized another grand jury in Lexington, Kentucky with respect to other Defendants originally indicted in this case.

he was not aware that Bowling had given testimony against his clients until the September 28, 2009 hearing. Special Agent Briggs also confirmed that the Whites' cooperation did not lead to Bowling's indictment.[4] Although it is expected that the information obtained by the Whites will be important to the government's case against several Defendants in the present case, Special Agent Briggs identified a number of witnesses who have and are expected to implicate Defendant Bowling in the alleged vote buying/voter fraud.

### III.    Conclusion

The government has demonstrated that its evidence against Bowling is not tainted by his grand jury testimony.  It has not used his immunized testimony, either directly or indirectly, in a manner that would violate is right against self-incrimination.  Instead, the United States has shown that it has independent, legitimate sources for the evidence used to obtain his indictment.  Accordingly, it is hereby

**ORDERED** that Defendant Stanley Bowling's motion to dismiss the indictment against him [Record No. 367] is **DENIED**.

This 29th day of September, 2009.



Signed By:

*Danny C. Reeves*

United States District Judge

---

[4]    Special Agent Briggs' testimony before the London grand jury on July 9, 2009, does reference the illegal kick-back scheme involving Keenon White.  However, that testimony identifies several witnesses implicating Bowling in illegal vote buying and voter fraud activities (including testimony provided by Wanda White).  Further, by the time of Special Agent Briggs' testimony, both Keenon and Wanda White had provided independent information against Bowling and others.  This information was not the result of Bowling's grand jury testimony.