UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 09-16-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STANLEY BOWLING, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Stanley Bowling's Motion to Dismiss for Lack of Subject Matter Jurisdiction. [Record No. 1074] Bowling argues that the Court does not have subject matter jurisdiction over Count 1 because the indictment alleges an improper predicate offense. Essentially, Bowling contends that Kentucky's vote-buying statute does not punish acts which involve bribery. Based on this contention, he argues that a violation of that statute is not "racketeering activity" within the meaning of 18 U.S.C. § 1961. However, for the reasons discussed below, Bowling's arguments are misplaced and his motion will be denied.

I.   **BACKGROUND**

On July 9, 2009, Bowling and seven co-defendants were charged in a superseding indictment that alleged RICO and money-laundering conspiracies by all eight defendants, as well as other conspiracies and substantive offenses by individual defendants and combinations of defendants. [*See* Record No. 272] The charges related to corruption surrounding elections in

-1-

Clay County, Kentucky. Bowling was charged in Counts 1 and 2 which alleged RICO and money-laundering conspiracies. [*Id.*] On March 25, 2010, following an eight-week trial, a jury found all of the defendants guilty on all charges. [Record No. 818] On November 1, 2010, more than six months after his conviction, Bowling brought the present motion requesting that the Court dismiss his RICO conspiracy conviction under Count 1.

## II.     STANDARD OF REVIEW

Bowling improperly frames his motion as a challenge to the Court's subject matter jurisdiction. [Record No. 1074, p. 2] He relies on the Sixth Circuit's holding in *United States v. Adesida*, 129 F.3d 846 (6th Cir. 1997), where the court explained that "[i]f an indictment does not charge a cognizable federal offense, then a federal court lacks jurisdiction to try a defendant for a violation of the offense." *Id.* at 850. Bowling argues that if the Kentucky vote-buying statute is not a proper RICO predicate, the offense charged is not a "cognizable federal offense." This argument is misplaced.

Conspiring to violate RICO is unquestionably a cognizable federal offense. *See* 18 U.S.C. § 1962(d). In *Adesida*, the indictment charged "conspiracy to attempt to import" — a crime which the defendant argued was nonexistent. *See* 129 F.3d at 850. The challenge in *Adesida* was not that the alleged facts were insufficient to warrant a conviction. Instead, the challenge was that the crime charged was not a crime at all. Bowling could challenge the Court's subject matter jurisdiction if the indictment charged something that *was not a crime*, but that is not the case here. The indictment charges a RICO conspiracy under 18 U.S.C. § 1962.

[Record No. 272] The indictment charges a cognizable federal offense and the Court has subject matter jurisdiction.

Bowling's argument is more properly framed as a challenge to the sufficiency of the indictment; however, even an insufficient indictment would not destroy the Court's subject matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630–31 (2002) (holding that defects in the indictment are not jurisdictional). In fairness to Bowling, the Court will not deny his motion merely because it was framed incorrectly. Properly construed as a challenge to the sufficiency of the indictment, Bowling's motion merits consideration.

A party may raise an allegation that the indictment does not state an offense at any time, even post-trial. *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (citing *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999) (allowing a defendant to challenge the sufficiency of the indictment for the first time on appeal)). However, when the indictment is challenged post-trial, a different standard of review applies. *United States v. Sabbeth*, 262 F.3d 207, 218 (2d Cir. 2001) ("The scrutiny given to an indictment depends, in part, on the timing of a defendant's objection to that indictment."). When the indictment is challenged after trial, the indictment should be "interpreted liberally, in favor of sufficiency." *Id.* (citing *United States v. Wydermyer*, 51 F.3d 319, 324–25 (2d Cir. 1995)). As a result, the Court will liberally construe the superseding indictment to determine whether the facts alleged are sufficient to sustain a conviction under 18 U.S.C. § 1962(d).

### III.    ANALYSIS: VOTE-BUYING AS A RICO PREDICATE

Bowling argues that the Superseding Indictment is insufficient because it alleges an offense (vote-buying) that is not a "racketeering activity" as defined by 18 U.S.C. § 1961(1). This argument can be boiled down to the following syllogism. The language of the Kentucky vote-buying statute (KRS § 119.205) mirrors the language of the federal vote-buying statute, 18 U.S.C. § 597. Congress did not include 18 U.S.C. § 597 in the exhaustive list of federal crimes that constitute "racketeering activity." *See* 18 U.S.C. §1961(1)(B). If Congress did not include 18 U.S.C. § 597 as a RICO predicate, it clearly intended to exclude vote-buying of all kinds as RICO predicates. Therefore, Bowling argues, the activity of vote-buying – even in contravention of state law – is not a cognizable RICO predicate.

On the surface, Bowling's argument has some logical appeal. However, it rests upon a false premise and ignores important, relevant authority. Principally, Bowling's position assumes that Congress defined state-law predicates with the same scope as it defined federal predicates. However, a plain reading of § 1961(1) reveals an intent to include a broader range of state crimes as predicate offenses. Congress explicitly included federal predicate offenses by specific designation with an exclusive list, while including state-law predicates by generic definition. Second, Bowling's discussion of congressional intent entirely ignores the stated purpose of RICO: to expand remedies and investigative tools for eradicating organized crime. Finally, an analysis of the generic definition of bribery shows that vote-buying is clearly within the term's scope. A majority of states consider vote-buying a form of bribery. And multiple states criminalize vote-buying within their general bribery statutes. Further, courts and legislatures have consistently expanded the scope of "bribery" beyond its traditional, common law definition

– which limited bribery only to paying governmental officials – to include additional conduct such as commercial bribery and bribing witnesses. After considering all of these factors, the Court concludes that KRS § 119.205 is a proper RICO predicate offense under the plain meaning and congressional intent of 18 U.S.C. § 1961(1)(A).

### A. The Plain Language and Intent of § 1961(1)

When construing any statute, the Court's first task is to examine the provision's plain language. *McBarron v. S & T Indus., Inc.*, 771 F.2d 94, 97 (6th Cir. 1985) ("[I]t is an elementary rule of statutory construction that we initially look to the plain language of the statute to determine the meaning of legislation."). A plain reading of 18 U.S.C. § 1961(1) reveals a simple fact: Congress addressed state-law predicates differently than federal predicates. Congress exhaustively listed the federal crimes which could be considered racketeering activity. *See* 18 U.S.C. § 1961(1)(B) (defining "racketeering activity" as "any act which is indictable under any of the following provisions of title 18, United States Code" and listing every single available federal predicate). However, Congress included state-law predicates by broad definition. *See id.* § 1961(1)(A) (defining "racketeering activity" as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year"). Under a plain reading, the most obvious conclusion is that the two types of predicate acts are defined differently: the scope of federal predicates is defined narrowly, while the scope of state predicates is defined broadly.

The legislative history supports this reading. The language of § 1961(1)(A) originally proposed was broader than the formulation Congress eventually adopted. S. Rep. No. 91-617, at 121 (1969) (examining the originally proposed definition of "racketeering activity," which included "any act involving the danger of violence to life, limb, or property, indictable under State or Federal law and punishable by imprisonment for more than 1 year"). The current language was suggested by a letter from the Deputy Attorney General, who noted it was "broad enough to include most State statutes customarily invoked against organized crime, yet narrow enough to be constitutional." *Id.* at 122. In codifying the proposed language, Congress explained: "State offenses are included by generic definition. Federal offenses are included by specific reference." S. Rep. No. 91-1549, at 56 (1970). The legislative history supports the reading that Congress included state-law offenses broadly when incorporating them as predicate acts.

A number of Courts have also affirmed a broad, generic reading of the categories of state-law predicates. *See United States v. Garner*, 837 F.2d 1404, 1418 (7th Cir. 1987) ("Congress intended for 'bribery' to be defined generically when it included bribery as a predicate act."); *United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir. 1977) (holding that the test for determining whether a state violation is a predicate offense is "whether the indictment charges a type of activity generally known or characterized in the proscribed category, namely, any act or threat involving bribery"). The Seventh Circuit has explained that "any statute that proscribes conduct which could be generically defined as bribery can be the basis for a predicate act." *Garner*, 837 F.2d at 1418 (citing *United States v. Bagaric*, 706 F.2d 42, 62–63 (2d Cir. 1983);

*United States v. Salinas*, 564 F.2d 688, 691–92 (5th Cir. 1977); *United States v. Frumento*, 563 F.2d 1083, 1087 (3d Cir. 1977)).

In short, the means by which Congress addressed federal and state-law predicates are entirely distinct. And this conclusion undermines Bowling's basic argument. It is not the case that when a state statute mirrors a federal statute and the federal statute was not included as a RICO predicate, activity which violates the state statute cannot, as a matter of law, constitute racketeering activity. Based on a plain reading of the statute and an examination of its legislative history, the reality is that Congress treated federal and state-law predicates differently. The sum of Congress' intent is this: it intended to include categories of state-law RICO predicates by generic definition. The only question, then, is whether vote-buying fits within the generic definition of bribery.

### B. The Purpose of RICO

Before proceeding, there is another aspect of Congress' intent that is helpful to this analysis. In Bowling's exhaustive discussion of what he asserts was Congress' intent in drafting RICO's provisions, he fails to examine the stated purposes of the act. In Congress' statement of findings and purpose, it set forth the underlying goal of RICO: "It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Pub. L. No. 91-452, 84 Stat. 922. In other words, the purpose of RICO is to provide law enforcement officials and prosecutors with additional tools and remedies to punish

participants in organized crime. Moreover, Congress made clear that "[t]he provisions of this title shall be liberally construed to effectuate its remedial purpose." Pub. L. No. 91-452, Title IX, 84 Stat. 947. Congress intended RICO to be liberally construed to help federal law enforcement convict members of organized crime.

It is also worth noting that one of the findings Congress included as justification for the act was that the money and power derived from organized crime were increasingly being used to infiltrate and corrupt business and labor unions "*and to subvert and corrupt our democratic processes.*" *Id.* (emphasis added). One of the purposes underlying RICO, then, was to protect the democratic process from the influence of organized crime. There are few institutions more central to the democratic process than voting. And few activities are more injurious to that process than buying votes. Congress' finding lends credibility to the United States' assertion that vote-buying is among the types of activities that are associated with organized crime and which Congress sought to eradicate through RICO. Keeping in mind the statute's stated purposes and notes on construction, the Court proceeds to consider whether vote-buying falls within the generic definition of bribery.

### C. The Generic Definition of Bribery

As noted previously, the ultimate question is whether vote-buying is an activity included in the generic definition of bribery. The Supreme Court's holding in *United States v. Nardello*, 393 U.S. 286 (1969), is instructive. *See United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir. 1977) (explaining that when the legislative history of 18 U.S.C. § 1961(1)(A) specifically states that "State offenses are included by generic definition" it "manifests the legislative intent to

incorporate the Supreme Court's holding in *United States v. Nardello* into the RICO statute" (internal citations omitted)). In *Nardello*, the Supreme Court considered how to define the term "extortion." *See* 393 U.S. at 289. The question before the Court was whether the defendant's conduct, which was classified as "blackmail" under Pennsylvania state law, was sufficient to support a federal conviction under the Travel Act, 18 U.S.C. § 1952. The Travel Act prohibited traveling in interstate commerce with the intent to carry on "extortion." The defendant argued that the Pennsylvania statutes distinguished between "extortion" and "blackmail," and only applied the label of extortion to conduct involving a public official. *Nardello*, 393 U.S. at 290. The defendant, whose acts did not involve a public official, argued that he therefore could not be convicted under the Travel Act. *Id.* at 288–89.

The Supreme Court examined the language and intent of § 1952 and found that "Congress directed that content should be given to the term 'extortion' in § 1952 by resort to state law, [but] it otherwise left that term undefined." *Id.* at 289. The Court went on to explain that while some states maintained the common law definition of extortion, limiting it to acts involving public officials, others had expanded the crime to include acts between private individuals. *Id.* at 289–90. The defendant argued that, in light of this diversity, Congress either intended to apply the narrow, common-law definition of extortion or, where a state had a statute specifically prohibiting extortion, limit § 1952's scope to that statute alone. *Id.* at 290. However, the Court found it against the purposes of § 1952 to allow the same conduct to be a Travel Act offense in one state, but not others. *Id.* at 294–95. The Court concluded that "extortion," as used in the

Travel Act, should be defined generically and that the term encompassed all "type[s] of activity generally known as extortionate." *Id.* at 296.

By incorporating the Supreme Court's holding in *Nardello* into RICO, Congress made clear that the categories of state-law predicates should be defined generically. As the Third Circuit explained: "the test for determining whether the charged acts fit into the generic category of the predicate offense is whether the indictment charges a type of activity generally known or characterized in the proscribed category." *Forsythe*, 560 F.2d at 1137. Bowling attempts to argue that paying someone in exchange for his or her vote in an election is not a type of activity generally considered bribery. However, looking at the same factors the Supreme Court found persuasive in *Nardello*, Bowling's argument fails.

### 1. State-Law Classification

Bowling first argues that Kentucky's classification of the offense should control. [Record No. 1074, p. 3] Because Kentucky has a general bribery statute (KRS § 521.020) which follows the traditional definition of bribery (paying money to a public servant) and does not include vote-buying, Bowling argues that vote-buying cannot be bribery in Kentucky. He points out that KRS § 119.205 "is not even codified with Kentucky's bribery statutes or even more generally, located within the Kentucky Penal Code. In fact it does not use the terms 'bribe' or 'bribery' at all." [Record No. 1074, p. 3] This is precisely the argument that was advanced to limit the definition of extortion in *Nardello*. *See* 393 U.S. at 293 ("Appellees argue that . . . peculiar versions of state terminology are controlling."). However, it was not persuasive then and is not persuasive now.

The *Nardello* Court made clear that "the inquiry is not the manner in which States classify their criminal prohibitions." *Id.* at 294; *see also Garner*, 837 F.2d at 1418 ("The labels placed on a state statute do not determine whether that statute proscribes bribery for purposes of the RICO statute."). Instead, the inquiry is whether the activity fits within the generic definition of the particular category and "whether the particular state involved prohibits the . . . activity charged." *Nardello*, 393 U.S. at 294. There is no dispute that Kentucky prohibits the conduct for which Bowling was indicted, but Kentucky's classification of that activity as distinct from bribery is not controlling.

An examination of other states' vote-buying statutes is also informative. *See Nardello*, 393 U.S. at 293–94 (examining other states' extortion and blackmail statutes to determine the scope of the term's generic definition). Contrary to Bowling's assertions, vote-buying is considered by most states to be a form of bribery.[1] A majority of states' vote-buying statutes are

---

[1] *See* Ariz. Rev. Stat. § 16-1006 (making it unlawful to "attempt to influence an elector in casting his vote" by means of "force, threats, menaces, *bribery*, or any other corrupt means" (emphasis added)); Fla. Stat. § 104.061 ("Whoever by *bribery*, menace, threat, or other corruption whatsoever . . . attempts to influence, deceive, or deter any elector in voting . . . commits a felony of the third degree." (emphasis added)); Idaho Code Ann. § 18-2305 (criminalizing "[e]very person who, by force, threats, menaces, *bribery*, or any corrupt means . . . attempts to influence any elector in giving his vote" (emphasis added)); Kan. Stat. Ann. § 25-2409 (titled "Election *bribery*" (emphasis added)); Me. Rev. Stat. Ann. tit. 17-A, § 602 (titled "*Bribery* in official and political matters" and criminalizing the payment of any benefit "with the intention of influencing the other's action, decision, opinion, recommendation, *vote*, or other exercise of discretion as a public servant, party official, or *voter*" (emphasis added)); Mass. Gen. Laws ch. 56, § 32 (titled "*Bribery* and Corruption Forbidden" and stating that "[n]o person shall, directly or indirectly, pay, give or promise to a voter, any gift or reward to influence his vote or to induce him to withhold his vote" (emphasis added)); Minn. Stat. § 211B.13 (titled "*Bribery*, Treating, and Solicitation" and criminalizing the payment of money for "a voter to refrain from voting, or to vote in a particular way" (emphasis added)); Mont. Code Ann. § 45-7-101 (titled "*Bribery* in official and political matters" and providing that "[a] person commits the offense of *bribery*" if he confers upon another "any pecuniary benefit as a consideration for the recipient's decision, opinion, recommendation, *vote*, or other exercise of discretion as a public servant, party official, *or voter*" (emphasis added)); Neb. Rev. Stat. § 32-1536 (titled "*Bribery*" and extending to "[a]ny person who, by *bribery*, attempts to influence any voter of this state in voting" (emphasis added)); Nev. Rev. Stat. § 293.700 (titled "*Bribery* of an elector" and covering "a person who *bribes*, or offers to bribe . . . any elector in giving his or her vote"

either labeled as bribery statutes or describe the conduct of vote-buying as bribery. If Bowling's argument were adopted, conduct which is called "election bribery" in Wisconsin, Wis. Stat. § 12.11, would somehow not be conduct "generally known" as bribery. *See Forsythe*, 560 F.2d at 1137. Likewise, "influenc[ing] an elector" by means of "bribery" in Arizona, Ariz. Rev. Stat. § 16-1006, would somehow not be an "act . . . involving . . . bribery." 18 U.S.C. § 1961(1)(A). Or, in the alternative, election bribery in Wisconsin or Arizona (or any of the other twenty-four states that criminalize vote-buying as bribery) would be racketeering activity, but the same conduct in Kentucky would not. Either way, the argument strains logic.

Examining the states' vote-buying statutes reveals another valuable point: multiple states criminalize vote-buying within their general bribery statutes. Montana, for example, criminalizes bribery of public servants, party officials, and *voters* within the same statute. *See*

---

(emphasis added)); N.H. Rev. Stat. Ann. § 659:40 (titled "*Bribing*; Intimidation; Suppression" and applying to a person who "*bribe[s]* any person . . . to vote for or against any ticket or candidate for office at any election" (emphasis added)); N.J. St. Ann. § 19:34-25 (titled "*Bribery*" and criminalizing the payment "to induce any voter to vote or refrain from registering for any election" (emphasis added)); N.M. Stat. § 1-20-11 (titled "Offering a *bribe*" and providing that "[o]ffering a *bribe* consists of willfully . . . paying . . . money . . . (A) to induce such person, if a voter, to vote or refrain from voting for or against any candidate, proposition, question, or constitutional amendment" (emphasis added)); Ohio Rev. Code Ann. § 3599.02 (titled "*Bribery* offenses concerning voters or potential voters" (emphasis added)); 26 Okla. Stat. § 16-106 (titled "*Bribes* to influence voters" (emphasis added)); 25 Pa. Stat. Ann. § 3539 (titled "*Bribery* at elections" (emphasis added)); R.I. Gen. Laws § 17-23-5 (titled "*Bribery* or intimidation of voters" (emphasis added)); S.C. Code Ann. § 7-25-60 (titled "Procuring or offering to procure votes by *bribery*" (emphasis added)); Tenn. Code Ann. § 2-19-126 (titled "*Bribing* voters" (emphasis added)); Tex. Penal Code § 36.02 (defining bribery as paying or receiving "any benefit as consideration for the recipient's decision, opinion, recommendation, *vote*, or other exercise of discretion as a public servant, party official, or *voter*" (emphasis added)); Utah Code Ann. § 20A-1-601 (titled "*Bribery* in elections — paying for votes" (emphasis added)); Vt. Stat. Ann. tit. 17, § 2017 (providing that "[a] person who attempts by *bribery*, threats or any undue influence to dictate, control or alter the *vote* of a freeman" is guilty of undue influence (emphasis added)); Va. Code Ann. § 24.2-1007 (titled "Soliciting or accepting *bribe* to influence or procure vote" (emphasis added)); Wash. Rev. Code § 29.85.060 (titled "Hindering or *Bribing* Voter" (emphasis added)); Wis. Stat. § 12.11 (titled "Election *bribery*" (emphasis added)); Wyo. Stat. Ann. § 22-26-109 (titled "Offering *bribe*" and providing that "[o]ffering [a] *bribe* consists of . . . paying . . . (i) [t]o induce a person to vote or refrain from voting for or against a candidate or ballot proposition" (emphasis added)).

Mont. Code Ann. § 45-7-101. Maine and Texas do as well. Me. Rev. Stat. Ann. tit. 17-A, § 602; Texas Pen. Code § 36.02; *cf. County of El Paso v. Jones*, No. 09-CV-00119, 2009 U.S. Dist. LEXIS 113413, at *57–58 (W.D. Tex. Dec. 4, 2009) (holding that violation of Texas Penal Code § 36.02 is a RICO predicate act of state-law bribery). In fact, that is the approach suggested by the American Law Institute in its Model Penal Code. *See* Model Penal Code § 240.1 (titled "Bribery in Official and Political Matters" and defining bribery as "any pecuniary benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter"). Even if the Court agreed with Bowling that bribery could only be committed by payment in exchange for official action, these states' approaches indicate that voting is often considered a type of official action. They lend even more weight to the conclusion that buying votes is the type of activity generally known as bribery.

In summary, while Kentucky's unique classification of vote-buying is not controlling, a broad look at how other states treat the same conduct is revealing. A majority of states and the Model Penal Code classify vote-buying as bribery. It is difficult then to argue convincingly, as Bowling attempts to do, that the conduct of vote-buying is somehow not "generally known" to be bribery.

### 2. Common Law Definition of Bribery

Bowling's next argument is that the Court should narrow the term "bribery" to its traditional, common law meaning. He relies on *United States v. Sisk*, where the district court stated that "[a]t common law and under most statutes, bribery is limited to a payment given in

exchange for the exercise of government power . . . .  By making bribery and extortion RICO offenses, Congress must be said to have understood that these offenses would be committed by government officials as part of their work."  476 F. Supp. 1061, 1062 (M.D. Tenn. 1979).  The court added that "these offenses can only be committed in the context of the work of a governmental agency."  *Id.*  Bowling asserts that, under *Sisk*, the definition of bribery should be limited to its strict definition: payments to a government official.

The court in *Sisk* was addressing the scope of the term "enterprise," not bribery.  *Id.* at 1062.  The question was whether the Governor's office of the State of Tennessee could be considered a RICO enterprise.  *Id.*  The defendants argued that, as members of a governmental agency, they could not be convicted under RICO because they were not an "enterprise."  *Id.*  In light of this argument, the court's ruling is only properly understood when noted that it was responding to the question of whether a conspiracy among governmental officers *could* be convicted under RICO, not whether particular conspiracies *required* such officers. Nevertheless, Bowling argues that the *Sisk* court's holding limited the scope of the term "bribery" to payments directed to public officials.  Yet, under Bowling's reading, *Sisk* would directly contradict the Supreme Court's holding in *Nardello*.  Bowling reads *Sisk* to say that both extortion and bribery, as incorporated into RICO, require the involvement of a governmental official.  *See Sisk*, 476 F. Supp. at 1062 ("By making bribery and extortion RICO offenses, Congress must be said to have understood that these offenses would be committed by government officials as part of their work.").  However, there is no question that when Congress incorporated *Nardello* into RICO, it intended to apply a definition of extortion which included extortion between non-official

actors. *See Nardello*, 393 U.S. at 296 ("Although only private individuals are involved, the indictment encompasses a type of activity generally known as extortionate."). Thus, *Sisk* can only be read to hold that a RICO enterprise involving bribery or extortion *could* involve public officials – not that it *must*.

Moreover, numerous courts have held that acts involving private individuals can constitute bribery. In *Perrin v. United States*, 444 U.S. 37 (1979), for example, the Supreme Court held that commercial bribery fits within the generic definition of bribery as used in the Travel Act.[2] Other courts have held that commercial bribery is a valid RICO predicate. *See, e.g.*, *United States v. Parise*, 159 F.3d 790, 798–99 (3d Cir. 1998); *United States v. Gaudreau*, 860 F.2d 357 (10th Cir. 1988); *Greer v. Stulp*, No. 01-C-9626, 2002 U.S. Dist. LEXIS 9335 (N.D. Ill. May 23, 2002); *Westlake Plastic Co. v. O'Donnell*, 182 F.R.D. 165, 170 (E.D. Pa. 1998). Additionally, in *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), the Second Circuit held that bribing a witness, in contravention of New York Penal Law § 215.00, constituted

---

[2] Notably, in examining the history and common law development of the term bribery, the Supreme Court explained:

> At early common law, the crime of bribery extended only to the corruption of judges. 3 E. Coke, Institutes *144, *147 (1628). By the time of Blackstone, bribery was defined as an offense involving a judge or "other person concerned in the administration of justice" and included the giver as well as the receiver of the bribe. 4 W. Blackstone, Commentaries *139–40 (1765). The writings of a 19th-century scholar inform us that by that time the crime of bribery had been expanded to include the corruption of any public official *and the bribery of voters* and witnesses as well. J. Stephen, Digest of the Criminal Law 85-87 (1877).

*Perrin*, 444 U.S. at 43 (emphasis added). While Bowling points out that the historical development described by the Supreme Court is not controlling as to the definition of bribery, it is certainly helpful in determining whether particular conduct such as vote-buying falls within the generic definition of the word. In *Perrin*, the Court noted, in passing, that the general understanding of the term has developed to include such activity. *See id.*

racketeering activity.[3]  Collectively, these cases demonstrate that a general understanding that activities beyond the traditional, common law definition of bribery – such as commercial bribery and bribing witnesses – are within the generic definition of bribery and constitute proper RICO predicate acts.  Bowling's argument that the generic definition of bribery is limited to the illegal payment of governmental officials is unpersuasive.

### 3. Other Relevant Authority

Finally, at least one court has specifically stated that election bribery is a valid RICO predicate.  In *Adams v. County of Erie*, No. 1:07-cv-316, 2009 U.S. Dist. LEXIS 87289 (W.D. Pa. Sept. 23, 2009), the defendant was charged with a RICO violation and "numerous violations of the Pennsylvania Election Code." *Id.* at *17.  The court explained that, in general, violations of the Election Code did "not constitute acts of racketeering for purposes of RICO." *Id.*  However, the court explained, violation of one election-related statute could constitute a valid RICO predicate: violation of 25 P.S. § 3539, titled "Bribery at elections."  The court noted that the activity "can constitute racketeering activity under RICO," although it was not applicable to the defendant's conduct in that particular case. *Id.*

## IV. CONCLUSION

Vote-buying in violation of KRS § 119.205 falls within the generic definition of bribery and is a "racketeering activity" within the plain language and intent of 18 U.S.C. § 1961(1)(A).

---

[3]  *Eisen* is not directly analogous to the facts at hand because witness bribery is criminalized by 18 U.S.C. § 201, which is listed as a federal-law RICO predicate. *See* 18 U.S.C. § 1961(1)(B).  As such, it does not directly contradict Bowling's essential argument regarding congressional intent.  However, it does show that courts and legislatures understand bribery to encompass activities beyond the payment of funds to governmental officials.

Accordingly, it is hereby

**ORDERED** that Defendant Stanley Bowling's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Record No 1074] is **DENIED**.

This 7th day of December, 2010.

